Attachment A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOES 1–9 AND JOHN DOES 1–3, <br><br>**Plaintiffs,**<br><br>v.<br><br>**KASHYAP P. PATEL**<br>in his official capacity as Director of the Federal Bureau of Investigation<br>Federal Bureau of Investigation<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535;<br><br>**FEDERAL BUREAU OF INVESTIGATION**<br>935 Pennsylvania Avenue, NW<br>Washington, D.C. 20535;<br><br>**PAMELA J. BONDI,**<br>in her official capacity as Attorney General<br>of the United States<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530;<br><br>**U.S. DEPARTMENT OF JUSTICE**<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530;<br><br>**EXECUTIVE OFFICE OF THE PRESIDENT**<br>1600 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20500;<br><br>and<br>**THE UNITED STATES OF AMERICA**<br>Washington, D.C. 20500,<br><br>**Defendants.** | CIVIL ACTION NO. |

## PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS AND MEMORANDUM IN SUPPORT

Plaintiffs are twelve FBI Special Agents who were summarily dismissed from their employment at the Federal Bureau of Investigation (FBI) on September 26, 2025. As the contemporaneously filed Complaint explains, their unlawful terminations were in retaliation for their actions more than five years earlier to de-escalate civil unrest that followed the murder of a civilian by law enforcement in 2020. Plaintiffs collectively possess close to two centuries of experience with the FBI, including in highly sensitive counterterrorism, counterintelligence, and cybercrime matters. Plaintiffs routinely investigated sophisticated and dangerous criminals who harbor animosity against law enforcement officers, relying upon anonymity to fulfill their law enforcement duties effectively and safely. Moreover, the unlawful terminations by Defendants have fueled antagonism against Plaintiffs. Publication in this case of Plaintiffs' identities would subject them and their families to an immediate risk of doxing, SWATting, harassment, and physical harm.[1] Such exposure would also directly interfere with their ability to resume their sensitive duties if reinstated to their positions at the FBI, as requested in the Complaint, or to pursue their profession as law enforcement officers outside the FBI.

---

[1] "Doxing" refers to the internet-based practice of gathering someone's personally identifiable information or an organization's sensitive information from open source or compromised material and publishing it online for malicious purposes. In many instances, these nefarious actors (referred to as doxers) compile sensitive information from a wide range of publicly available data sources, including personal and professional accounts, to develop invasive profiles of their targets. These profiles are then published online with the intent to harm, harass, or intimidate. "SWATting" entails making a hoax 9-1-1 call in an attempt to draw a response from law enforcement, typically a SWAT Team, to the target's residence with the intent to harm, humiliate, or intimidate the target directly or through family members. Swatters often use technology to give the appearance that the emergency call originated from the target's phone. Memorandum, Urgent Safety Message from FBI, https://socxfbi.org/SFSA/SFSA/Featured-Articles/Urgent-Safety-Message-from-FBI.aspx.

Because of the high risk of harm to Plaintiffs and their families that would result from using their names in this litigation, Plaintiffs respectfully request that the Court permit them to proceed pseudonymously in this matter.

## LEGAL BACKGROUND

Federal Rule of Civil Procedure 10(a) and Local Civil Rule 5.1(c)(1) establish the general rule that a complaint must state the names of all parties, consistent with "the general public interest in the openness of governmental processes, and, more specifically, from the tradition of open judicial proceedings." *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019) (quotation marks omitted). Importantly, however, "it is within the discretion of the district court to grant the 'rare dispensation' of anonymity" in certain cases. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) (quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)). "The court has a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted" and should "take into account the risk of unfairness to the opposing party, as well as the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* (internal citations omitted).

"The moving party bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name." *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020). Once a "legitimate interest in anonymity" is established, the court must balance it "against countervailing interests in full disclosure." *Id.* (internal citations omitted). Courts in this district do so through a "flexible and fact driven" balancing test assessing "five non-exhaustive factors":

1. Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;

3

2. Whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;

3. The ages of the persons whose privacy interests are sought to be protected;

4. Whether the action is against a governmental or private party; and, relatedly,

5. The risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* at 326-27.

## ARGUMENT

The Court should grant Plaintiffs' request to proceed under pseudonyms. Plaintiffs possess a strong legitimate interest in proceeding pseudonymously, and this District's five-factor balancing test amply supports Plaintiffs' proceeding pseudonymously in this case.

### I. Plaintiffs Possess a Legitimate Interest in Pseudonymous Filing

Plaintiffs have a strong legitimate interest in proceeding pseudonymously. The D.C. Circuit has repeatedly observed that in general, FBI agents have an ongoing interest in maintaining their anonymity. *See Lesar v. United States Dept. of Justice*, 636 F.2d 472, 487 & n.88 (D.C. Cir. 1980) ("As several courts have recognized, [FBI] agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." (collecting cases)); *Baez v. Department of Justice*, 647 F.2d 1328, 1339 (D.C. Cir. 1980) (affirming reasoning that FBI agents' names should be protected because they "conduct official inquiries into violations of various criminal statutes and in national security cases"). Although the existence of a privacy interest "will always be dependent on the context in which it has been asserted," withholding agents' names is appropriate where disclosure would "put the agents in danger." *Armstrong v. Executive Ofc. of the President*, 97 F.3d 575, 581-82 (D.C. Cir. 1996).

4

FBI agents' privacy interests in their names have become more acute in recent years as doxing and SWATting of law enforcement officers has become increasingly commonplace. The Department of Justice, the Department of Homeland Security (DHS), and the FBI have each identified doxing and SWATting as a serious threat to the safety of federal officers and their families. The FBI's Security Division has issued a memorandum stating that "[s]everal current and former FBI employees have been subjected to doxing and/or SWATting incidents over the past year" and encouraging current and former FBI agents to take "proactive measures" to protect themselves and their families from these dangerous practices.[2] On October 9, 2025, DHS issued a press release identifying "escalating threats" against law enforcement officers and their families.[3] This followed a September 26, 2025, federal indictment of three people who followed a federal law enforcement officer home while livestreaming their progress and the officer's home address on Instagram.[4]

As former federal law enforcement officers who allege they were unlawfully terminated for political reasons by Defendants, Plaintiffs and their families face a real and present threat of danger should their names be publicized in this case. First, Plaintiffs face a threat on account of their case work while they were employed as FBI agents. As FBI Special Agents, Plaintiffs investigated criminal violations committed by individuals and organizations capable of

---

[2] Memorandum, Urgent Safety Message from FBI, https://socxfbi.org/SFSA/SFSA/Featured-Articles/Urgent-Safety-Message-from-FBI.aspx.

[3] Press Release, DHS Condemns Dangerous Doxxing and Escalating Threats Against Fed. Law Enf't Officers (Oct. 9, 2025), https://www.dhs.gov/news/2025/10/09/dhs-condemns-dangerous-doxxing-and-escalating-threats-against-federal-law.

[4] Press Release, Fed. Grand Jury Charges Three Women with Following ICE Agent Home from Work and Livestreaming His Home Address on Instagram (Sept. 26, 2025), https://www.justice.gov/usao-cdca/pr/federal-grand-jury-charges-three-women-following-ice-agent-home-work-and-livestreaming.

sophisticated offenses. Second, Plaintiffs face the threat of harm from individuals otherwise unknown to Plaintiffs who may seek to target them because of the events documented in the Complaint. Plaintiffs' terminations were reported by multiple major national and international news outlets; and the events from 2020 underlying the terminations stemmed from a volatile period of civil unrest across the nation.[5] Significantly, Defendants' unlawful terminations—and the false political narrative they advance—appear to have emboldened certain members of the public to consider their own retaliation against Plaintiffs, as reflected in troubling comments posted on national news websites. *See, e.g.,* Eyewitness News ABC7NY, *FBI fires agents photographed kneeling during 2020 racial justice protest, AP sources say* (YouTube, Sept. 26, 2025), https://www.youtube.com/watch?v=cXa08geB6IM ("Now they are ours to play with🙏💪"); WUSA9, *FBI fires agents who kneeled during George Floyd protests* (YouTube, Sept. 27, 2025), https://www.youtube.com/watch?v=ftEZDk8ecZo (Plaintiffs "must be delt [sic] with"). These publicly posted comments highlight the serious risk of harm to Plaintiffs should their personal identifying information be revealed through this lawsuit.

Plaintiffs also face a substantial risk of occupational and reputational harm should their names be made public in this litigation. Plaintiffs' anonymity is key to successfully performing their law enforcement duties, which have included conducting covert counterintelligence and counterterrorism operations with anti-United States government and extremist organizations.

---

[5] *See, e.g.,* Huo Jingnan, *FBI agents fired, including some shown kneeling during 2020 protests*, NPR (Sept. 27, 2025); Mike Levine, et al, *FBI fires agents who kneeled at protest after George Floyd's death: Sources*, ABC (Sept. 26, 2025); Jake Miller, et al, *FBI fires agents photographed kneeling during 2020 protest*, CBS (Sept. 27, 2025); Devlin Barrett, *F.B.I. Fires More Agents, Including Those Who Knelt During Racial Justice Protests*, NYT (Sept. 27, 2025); Sofia Ferreira Santos, *FBI fires agents pictured kneeling at George Floyd protest, US media report*, BBC (Sept. 27, 2025); and Evan Perez, *FBI fires agents seen kneeling in iconic photo during George Floyd protests five years ago*, CNN (Sept. 27, 2025).

Should their names be revealed, not only will Plaintiffs face a likelihood of physical harm, but the disclosure would threaten Plaintiffs' ability to return to any position requiring them to apply their extensive skill and experience in covert operations, whether in the FBI or at another law enforcement agency.

## II.    The Five-Factor Balancing Test Weighs in Favor of Pseudonymous Filing

The strong legitimate interests of Plaintiffs withstand balancing against any "countervailing interests," with each of this Circuit's five relevant factors for pseudonymous filing supporting Plaintiffs' request.

The first and second factors consider the need for privacy to avoid harm. Here, "the justification asserted by" Plaintiffs is not "merely to avoid the annoyance and criticism that may attend any litigation." *In re Sealed Case*, 971 F.3d at 326. Rather, Plaintiffs' request reflects a genuine need "to preserve privacy in a matter of a sensitive and highly personal nature" and lessen a "risk of retaliatory physical or mental harm" to Plaintiffs, and "even more critically, to innocent non-parties." *Id.* As FBI agents who investigated serious criminal offenses, Plaintiffs had a significant privacy interest in their names even before the unlawful terminations. Given the attention Plaintiffs' terminations received, as well as the evidence that the terminations have inflamed animus against Plaintiffs, there is a heightened and continuous risk of danger to Plaintiffs and their families. *See Ellison v. Islamic Republic of Iran*, No. CV 25-2250 (UNA), 2025 WL 2049266, at *2 (D.D.C. July 22, 2025) (considering second factor and noting the "innocent non-parties in this case are, at a minimum, Plaintiffs' family members, who are equally at risk of the abovementioned harm"); *see also Doe v. Cabrera*, 307 F.R.D. 1, 6-7 (D.D.C. 2014) (explaining that including plaintiff's name in court filings would make it "indefinitely available to the public," which "especially in the Internet age" poses a danger of ongoing and "unnecessary" harassment).

In addition, Plaintiffs' ability to pursue their law enforcement profession would be seriously harmed by a lack of pseudonymity in this case. By seeking to proceed pseudonymously, Plaintiffs seek to mitigate the harm caused by Defendants' unlawful actions against them.

The third factor considers the ages of the requesting parties. This factor can favor pseudonymity where adult plaintiffs "share common privacy interests with their minor child due to their intractably linked relationship." *Z.J., et al. v. District of Columbia*, No. 23-cv-1279, ECF No. 3 (Mem. Op.) at 4 (D.D.C. May 9, 2023) (cleaned up). Although Plaintiffs are adults, many have young children, in some cases sharing uncommon last names. By permitting Plaintiffs to proceed pseudonymously, the Court would decrease the risk of retaliatory harassment and violence to Plaintiffs and their families.

The fourth factor considers the nature of the action. Plaintiffs seek individualized relief against federal government agencies and officials, favoring pseudonymity. Where "a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than" where the defendant is "an individual . . . accused publicly of wrongdoing." *Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 n. 9 (D.D.C. 2008) (citations omitted). This is "because governmental bodies do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing." *Doe v. De Amigos, LLC*, No. 11-cv-1755 (ABJ), 2012 WL 13047579, at * 3 (D.D.C. Apr. 30, 2012) (internal citations omitted). Furthermore, "whatever reputational harm comes to Defendant from these allegations is the same regardless of whether Plaintiff[s] use [their] actual name[s] or Jane Doe; the allegations are the same no matter who brings them." *Doe v. Darden Restaurants, Inc.*, 736 F. Supp. 3d 297, 302 (D. Md. 2024). Pseudonymity is also more appropriate where "plaintiffs seek only individualized relief" as opposed to "programmatic relief" that "intensifie[s]" the public

interest in their case. *Does 1-158 v. Rubio*, No. CV 25-3032, 2025 WL 2709775, at *2 (D.D.C. Sept. 23, 2025).

Finally, the fifth factor considers unfairness to the other party. In this matter, there is no risk of unfairness to Defendants, and Defendants will suffer no prejudice if Plaintiffs are allowed to proceed under pseudonyms. Defendants know the Plaintiffs' identities: Defendants only recently terminated Plaintiffs from their employment with the FBI. Moreover, Plaintiffs will submit their names under seal for Defendants' review. Accordingly, the fifth factor is not even implicated in this matter. *See In re Sealed Case*, 971 F.3d at 326 n.1 (explaining that this factor is "not implicated" when defendant knows plaintiff's identity). Pseudonymity will not compromise Defendants' ability to defend the action and poses "no risk of unfairness to the opposing party." *Nat'l Ass'n of Waterfront Emp'rs*, 587 F. Supp. 2d at 99; *Doe v. Austin*, No. 22-cv-3474 (RC), 2024 WL 864197, at *4 (D.D.C. Feb. 29, 2024) ("Defendant suffers no 'risk of unfairness'" by Plaintiff proceeding pseudonymously where Defendant is provided opposing party's identity).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court file the attached Complaint and permit Plaintiffs to proceed pseudonymously to protect against needless retaliation and occupational harm.

Dated: December 8, 2025                                   Respectfully submitted,

/s/ John David Kuchta
JOHN DAVID KUCHTA (DDC No. FL00158)
JOHN KUCHTA LAW, PLLC
12481 Brantley Commons Court
Fort Myers, FL 33907
239-690-6080
jkuchta@robertfoleylaw.com


*Counsel for Plaintiff Jane Doe 6*

/s/ Mary L. Dohrmann
MARY L. DOHRMANN† (DDC No. D00482)
SAMANTHA P. BATEMAN* (D.C. Bar No. 492919)
ELIZABETH D. COLLERY* (D.C. Bar No. 422246)
KYLE R. FREENY (DDC/D.C. Bar No. 1684764)
JAMES I. PEARCE*††
NATHANIEL A.G. ZELINSKY* (D.C. Bar No. 1724093)
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
mdohrmann@washingtonlitigationgroup.org

*Application for D.D.C. admission pending

† Admitted only in New York; practicing under the supervision of D.C. bar members

†† Admitted only in New York and North Carolina; practicing under the supervision of D.C. bar members

*Counsel for Plaintiffs Jane Does 1-9 and John Does 1-3*