UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANE DOES 1–9** and **JOHN DOES 1–3,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**KASHYAP P. PATEL**<br>Director of the Federal Bureau of Investigation, *et al.*,<br><br>**Defendants.** | CIVIL ACTION NO. 25-4258 (TNM) |

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH RULE 10(A) AND RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE UNDER SEAL**

On December 15, 2025, Chief Judge James E. Boasberg issued a well-supported Memorandum Opinion and Order granting Plaintiffs' request to proceed pseudonymously, "subject to any further reconsideration" by this Court. *See* ECF No. 5. In connection with their first court filings in this matter, Defendants seek to publish Plaintiffs' names, along with legally irrelevant and prejudicial photographs and URL links that, according to Defendants, would make possible the identification of Plaintiffs by members of the public. *See generally* ECF Nos. 14, 15; ECF No. 15-4 at 6. In fact, Defendants—which include the nation's premier law enforcement agencies, where Plaintiffs dedicated their careers to public service for a collective two centuries— seek free rein to publicly identify Plaintiffs and potentially other former FBI agents who are not parties without regard to the real risk of violent retaliation that Defendants' own overheated rhetoric has fueled.

The Court should retain the Court order granting pseudonymity and reject Defendants' efforts to reveal Plaintiffs' names and publish the proffered photographs and URLs, which would

unnecessarily endanger Plaintiffs without serving any legitimate purpose of Defendants. Moreover, it would constitute legal error for this Court to consider Plaintiffs' proffered photographs at this early stage in the litigation—the motion-to-dismiss stage—and thus Defendants' request to clarify whether those photographs may be filed without redactions under the pseudonymity order is premature. Accordingly, the Court should (1) deny Defendants' Motion to Compel Compliance with Rule 10(a), or for Modification/Clarification of Pseudonymity Requirements, ECF No. 15-4 ("Defs.' Rule 10(a) Mot."); and (2) grant Defendants' Motion for Leave to File Under Seal, ECF No. 15 ("Defs.' Mot. Seal"), by (a) filing under seal Defendants' unredacted Rule 10(a) Motion, ECF No. 15-3; and (b) filing Defendants' redacted Rule 10(a) Motion, ECF No. 15-4, on the public docket.

I.    **Pseudonymity Is Warranted for Plaintiffs**

The existing record amply confirms that "Plaintiffs['] . . . interest in pseudonymity outweighs the public's interest in learning their identities." ECF No. 5 at 3. As set forth in the Complaint and Amended Complaint, ECF Nos. 1, 17, Plaintiffs' unlawful firings resulted from partisan retaliation that falsely portrays Plaintiffs as political actors and allies of rioters. Unsurprisingly, this untrue narrative has fueled antagonism from some members of the public against Plaintiffs, underscoring their interests in maintaining privacy and increasing the risk of retaliatory harm from filing suit. Requiring Plaintiffs to disclose their names in court filings in this matter would further endanger them, and, relatedly, have the "unintended consequence of discouraging similarly situated victims" of constitutional violations from filing suit to vindicate their rights. *Doe v. Cabrera*, 307 F.R.D. 1, 6-7 n.9 (D.D.C. 2014).

Plaintiffs' original motion to proceed under pseudonyms, ECF Nos. 2, 12-1, and the Chief Judge's five-page opinion, ECF No. 5, set forth the applicable law and facts. To avoid repetition,

Plaintiffs focus this opposition on responding to Defendants' arguments in light of the applicable test.  That test weighs any "legitimate interest in anonymity" "against countervailing interests in full disclosure" using a "balancing test [that] is necessarily flexible and fact-driven."  *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020) (citation omitted).  In applying this test, the Court must "weigh" five non-exhaustive factors:

1. Whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature;

2. Whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;

3. The ages of the persons whose privacy interests are sought to be protected;

4. Whether the action is against a governmental or private party; and, relatedly,

5. The risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* at 326-27 (cleaned up).

Here, every factor weighs in favor of allowing Plaintiffs to maintain their anonymity in this litigation.  And even if this Court finds that one or more factors militate in favor of the government, the balance of factors strongly counsels in favor of maintaining the existing Court order allowing Plaintiffs to proceed pseudonymously.

    A. <u>Plaintiffs Possess a Legitimate Interest in Anonymity, and Their Privacy Interests Are Acute</u>

The relevant test first considers whether there is a legitimate interest in anonymity and whether pseudonymity would "preserve privacy in a matter of a sensitive and highly personal nature." ECF No. 5 at 2.  Here, "[g]iven [Plaintiffs'] background, and in light of the increasing incidence of doxing and SWATing directed at law enforcement," ECF No. 5 at 3, that test is easily met.  Plaintiffs are former law enforcement agents whose past assignments involved dangerous

individuals and national security matters. *See* ECF No. 12-1 at 6-7. Moreover, during a period of increasing violence toward law enforcement, Defendants have wrongfully labeled Plaintiffs as politically motivated actors who engaged in improper activity. Indeed, to assert that Plaintiffs face no danger of harm, Defendants' Rule 10(a) Motion falsely proclaims that Plaintiffs "kneeled in apparent solidarity with or acquiescence to anti-law-enforcement rioters." Defs.' Rule 10(a) Mot. at 7. Under these circumstances, the relevant case law supports pseudonymity. *See, e.g., Doe v. Benoit*, No. 19-cv-1253, 2019 WL 13079193, at *4 (D.D.C. Apr. 30, 2019) (granting pseudonymity where "requiring disclosure of [plaintiff's] name would unfairly brand her as a likely terrorist or traitor, and at best, as a troublemaker"); *cf. Doe v. McKernan*, No. CV 24-488 (JEB), 2024 WL 1143932, at *2 (D.D.C. Feb. 23, 2024) ("Harms stemming from being falsely associated with misconduct can certainly weigh in favor of pseudonymity."), *aff'd sub nom. Doe v. Hill*, 141 F.4th 291 (D.C. Cir. 2025).

Defendants concede that "protecting the identities of law enforcement officers who are just doing their jobs will often serve important interests." Defs.' Rule 10(a) Mot. at 6. Plaintiffs agree, and "just doing their jobs" is exactly what Plaintiffs always did as non-partisan law enforcement officers, including on June 4, 2020. Thus, they have important interests in protection of their identities. Tellingly, Defendants do not spell out why, in this matter, they are abandoning their longstanding policy of protecting agents' identities, which has ample support in this Circuit's case law. *See* ECF No. 12-1 at 4 (citing *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 & n.88 (D.C. Cir. 1980) ("As several courts have recognized, [FBI] agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives." (collecting cases)); *Baez v. U.S. Dep't of Just.*, 647 F.2d 1328, 1339 (D.C. Cir. 1980) (affirming reasoning that FBI agents' names should be protected

because they "conduct official inquiries into violations of various criminal statutes and in national security cases"); *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 581-82 (D.C. Cir. 1996) (withholding agents' names is appropriate where disclosure would "put the agents in danger").

Defendants cite cases involving, among others, a former FBI Director to support the contention that "terminated FBI personnel who affirmatively bring lawsuits routinely do *not* proceed pseudonymously." Defs.' Rule 10(a) Mot. at 6. But Defendants do not explain how that assertion fits into this Circuit's pseudonymity analysis, nor do they say whether any of those terminated FBI personnel moved or reasonably could have moved for pseudonymity. In any event, Plaintiffs were never the FBI Director and possessed neither the reasonable expectation nor resources associated with being named publicly in the fashion Defendants press here.

Defendants' assertion that any privacy interests of Plaintiffs are "weak" is flatly wrong. *Id.* In support, Defendants state that "at least two Plaintiffs' identities . . . have already been published online" on unconfirmed, non-official websites, to which Defendants provide URL links in the unredacted version of their Rule 10(a) Motion. Defs.' Rule 10(a) Mot. at 6; ECF No. 15-3 at 6. Defendants apparently based their deductions on sealed information provided to them by Plaintiffs. *See* ECF Nos. 5, 13. As a preliminary matter, it would be a perverse result to unseal previously protected information based on an identification made through the use of that same protected information. But taking Defendants' argument at face value, it does not hold water. Under the relevant case law, prior publication of a litigant's identity by a third party does not obviate a plaintiff's privacy interest in pseudonymity. *See, e.g., Doe No. 2 v. Kolko,* 242 F.R.D. 193, 197-98 (E.D.N.Y. 2006) (allowing plaintiff to proceed pseudonymously where "knowledge of plaintiff's identity" was not "so widespread" as to undermine his privacy concerns); *E.E.O.C. v. Spoa, LLC,* No. CIV. CCB-13-1615, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) ("[T]he

fact that Jane Doe was known by her legal name during the EEOC investigative process does not undermine her privacy interest in proceeding anonymously now" because "the EEOC investigative record is not as widely available."); *cf. Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (denying pseudonymity where plaintiff had informed the press of her name, residence, and place of employment). Furthermore, Defendants' argument provides no basis for revealing the identities of *all* of the Plaintiffs. And unmasking two out of the twelve Plaintiffs, on the ground of some marginal, unconfirmed, and non-official alleged exposure of those Plaintiffs' identities would greatly and needlessly increase the risk of retaliatory harm to them.

Defendants further claim that "widely circulated photographs diminish all Plaintiffs' privacy interest, because members of the public can likely discover some or all of their identities," while seeking to publish those photographs in their filings. Defs.' Rule 10(a) Mot. at 6, 9; Defs.' Mot. Dismiss Am. Complaint, ECF No. 18 at 6; Defs.' Mot. Seal at 3. Defendants do not explain, however, how "members of the public" can "likely discover" Plaintiffs' identities from the photographs, and it is not evident how they might be able to do so without particular effort and sophisticated technology. Moreover, accepting as true Defendants' imprecise contention that "some or all" Plaintiffs are identifiable in the photographs, Defendants nevertheless cannot cite any relevant case law supporting the proposition that such publication destroys a plaintiff's need for pseudonymity. And notably, Defendants fail to inform the Court that former FBI agents who are not parties to this action are depicted in the photographs, implicating those non-parties' privacy interests as well.

Defendants purport to rely on the photographs in their motion to dismiss and cite their unredacted Rule 10(a) pleading in that motion. *See* Defs.' Mot. Dismiss Am. Complaint, ECF No. 18 at 6 (referencing photographs in unredacted Rule 10(a) motion). But such an approach is wholly

6

improper. Photographs—by their nature providing a limited perspective on any given event they purport to capture—cannot be considered at the motion to dismiss stage, where the question before the Court is whether Plaintiffs have stated a claim on the face of their complaint. *See, e.g., Ibrahim v. Rubio,* No. 24-CV-02915 (TNM), 2025 WL 3718637, at *2 (D.D.C. Dec. 23, 2025) (discussing Rule 12(b)(6) motion to dismiss standard). Indeed, consideration of the photographs in connection with a motion to dismiss would constitute legal error. *Am. President Lines, LLC v. Matson, Inc.*, 633 F. Supp. 3d 209, 235 (D.D.C. 2022) (declining to consider exhibits submitted in connection with a motion to dismiss and explaining that, "[a]t the motion to dismiss stage, a court is limited to the four corners of the complaint, as well as any documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies, as well as facts of which the Court may take judicial notice" (cleaned up)). In addition, as explained below, Defendants should not be permitted to publish information that cannot be considered at this phase and might enable potential bad actors intent on identifying Plaintiffs to, in Defendants' own words, "likely discover some or all of [Plaintiffs'] identities"—not to mention the identities of other former FBI agents who are not even parties to this action. Defs.' Rule 10(a) Mot. at 6.

Finally, Defendants claim not to understand how "pseudonymity in this case would facilitate covert work" conducted by Plaintiffs in the past or in the event that they are reinstated to their long-held positions with the FBI, Defs.' Rule 10(a) Mot. at 7—a troubling blind spot for counsel for federal law enforcement agencies. To explain: If someone has been publicly identified in court filings (let alone as a former and would-be future FBI agent), it is difficult for them to act covertly under a different identity. The Department of Justice apparently was aware of this issue in a recent matter where it filed suit to challenge certain state law provisions that it alleged would

7

"enable suspects to identify officers who may be involved in future enforcement actions, including undercover operations." Complaint ¶ 66, *United States v. California et al.*, No. 25-cv-10999 (C.D. Cal.) (Nov. 17, 2025). Defendants also complain that Plaintiffs have not "meaningfully explain[ed] the nature of their individual work." Defs.' Rule 10(a) Mot. at 7. Absent an order from the Court, Plaintiffs will decline Defendants' invitation to reveal national security information regarding their prior and potential future law enforcement activities in court filings that could become public, where it is unnecessary for the pseudonymity analysis, and where Defendants possess the relevant information.

B. The Risk of Retaliatory Harm Is Serious

The second factor asks "whether identification poses a risk of retaliatory physical or mental harm to the requesting party" or "innocent non-parties." ECF No. 5 at 2. This factor is so overwhelmingly in Plaintiffs' favor that it is essentially dispositive. *See id.* at 4 (finding that "Plaintiffs allege a credible and non-speculative threat of retaliatory harm").

The threat to Plaintiffs—former FBI agents with sensitive past assignments who have now been targeted by their former employer—is real and well documented. As discussed in Plaintiffs' motion for pseudonymity, federal law enforcement agencies have specifically noted the dangers of doxing and SWATing posed by the naming of agents, and Plaintiffs themselves have been subject to online threats even in the absence of the publication of their names in court filings. *See* ECF No. 12-1 at 3-7 & nn.2-4. The serious nature of the threat to Plaintiffs is further documented in court cases and press reports. *See, e.g., Fed. Bureau of Investigation Agents Ass'n v. U.S. Dep't of Just.,* No. CV 25-328 (JEB), 2025 WL 436050, at *2 (D.D.C. Feb. 4, 2025) ("Indeed, one January 6 defendant has already been convicted of plotting to kill FBI special agents who investigated him over his crimes at the Capitol." (cleaned up)); Tom Dreisbach, *An attempted*

8

*attack on an FBI office raises concerns about violent far-right rhetoric*, NPR (Aug. 12, 2022), https://www.npr.org/2022/08/12/1117275044/an-attempted-attack-on-an-fbi-office-raises-concerns-about-violent-far-right-rhe (following the search warrant at Mar-a-Lago and related anti-FBI rhetoric, individual armed with an AR-15 and nail gun attempted to breach FBI Cincinnati field office). This threat exists for innocent non-parties, that is, Plaintiffs' families, as well. *See Ellison v. Islamic Republic of Iran*, No. CV 25-2250 (UNA), 2025 WL 2049266, at *2 (D.D.C. July 22, 2025) (considering second factor and noting the "innocent non-parties in this case are, at a minimum, Plaintiffs' family members, who are equally at risk of the abovementioned harm"). The government recently has recognized the danger doxing poses to targets' family members, as reflected in the "Frequently Asked Questions" section of a federal law enforcement website. *See Immigration Enforcement Frequently Asked Questions*, U.S. Customs and Immigration Enforcement, https://www.ice.gov/immigration-enforcement-frequently-asked-questions (last visited Mar. 9, 2026) ("ICE law enforcement officers wear masks to prevent doxing, which can (and has) placed them and their families at risk.").

Far from disproving the threat, Defendants' filings deliberately magnify it, falsely claiming that Plaintiffs are aligned with "anti-law-enforcement rioters." Defs.' Rule 10(a) Mot. at 7 ("[I]t is unclear why radical activists who dox and/or SWAT law enforcement officers would target Plaintiffs for having kneeled in apparent solidarity with or acquiescence to anti-law-enforcement rioters."). As set forth here, in Plaintiffs' initial motion for pseudonymity, and in the Amended Complaint, ECF No. 17, Defendants' actions have only increased the risk of retaliation toward Plaintiffs. In short, the record shows a real and serious threat to Plaintiffs and their families.

C. <u>The Privacy Interests of Minors Are Implicated</u>

The third factor for pseudonymity asks "the ages of the persons whose privacy interests are sought to be protected." ECF No. 5 at 2. Plaintiffs are adults, but multiple Plaintiffs have minor children. For the reasons previously stated, given the nature of the threat to Plaintiffs, Plaintiffs' concern about their children's privacy is not "entirely speculative" as Defendants claim in this case. Defs.' Rule 10(a) Mot. at 8. Defendants state that Plaintiffs "do not explain who has children or what last names are uncommon." *Id.* Notably, Defendants are in possession of this sensitive information about Plaintiffs, yet fail to rebut these assertions. Defendants thus lack any apparent reason, beyond harassment, to request that Plaintiffs provide these details in court filings. In any event, the Chief Judge's decision gave only "modest weight" to this factor. ECF No. 5 at 4.

D. <u>Plaintiffs' Names Are Not Relevant in this Action Against the Government</u>

The fourth factor for pseudonymity asks "whether the action is against a governmental or private party." ECF No. 5 at 2. Relying on settled case law, the prior opinion concluded that the factor favors pseudonymity because Plaintiffs are suing the government for individualized relief. *Id.* at 4. In response, Defendants cite a law review article reporting that courts have taken different views on whether the factor weighs for or against pseudonymity when the defendants "are public officials and government bodies." Defs.' Rule 10(a) Mot. at 8 (citing Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1378 (2022)). In fact, the law review article noted the common use of pseudonymity in cases against the government that "involve topics that are seen as private or as risking improper retaliation against plaintiffs"—like this one. Volokh at 1378. In this case, the fact that the suit is against the government, rather than a private party, weighs in favor of pseudonymity "because governmental bodies do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing," *Doe v.*

*De Amigos*, *LLC*, No. 11-cv-1755 (ABJ), 2012 WL 13047579, at * 3 (D.D.C. Apr. 30, 2012) (internal citations omitted), and "whatever reputational harm comes to Defendant from these allegations is the same regardless of whether Plaintiff[s] use [their] actual name[s] or Jane Doe; the allegations are the same no matter who brings them," *Doe v. Darden Restaurants, Inc.,* 736 F. Supp. 3d 297, 302 (D. Md. 2024). The public interest in evaluating litigation against the government is satisfied by the general information provided about Plaintiffs in the Amended Complaint.

E. Defendants Suffer No Cognizable Prejudice from Pseudonymity

The fifth factor for pseudonymity assesses "the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." ECF No. 5 at 2. The prior opinion concluded that "allowing Plaintiffs to proceed pseudonymously would not prejudice Defendants" because "Plaintiffs were terminated by [Defendants] shortly before filing this action, and they have agreed to submit their identities to Defendants for review under seal." *Id.* at 5. Nevertheless, Defendants claim that "allowing Plaintiffs to proceed pseudonymously would severely prejudice" them because of "the public prejudice . . . from Plaintiffs' one-sided narrative," *i.e.*, the allegations in Plaintiffs' Amended Complaint. Defs.' Rule 10(a) Mot. at 8-9. But Defendants do not need to inject Plaintiffs' names and other identifying information into the public sphere to respond to their allegations. Indeed, at the motion-to-dismiss stage, such information is immaterial.

In their analysis of this factor, Defendants seem to arrive at their primary motivation: They argue that Plaintiffs' names must be made public so Plaintiffs can be "'subject[ed] to public scrutiny,'" including attendant "'scorn and criticism.'" *Id.* at 9 (quoting Volokh, *supra*, 73 Hastings L.J. at 1380). But at present there is no need for any direct challenges to Plaintiffs' credibility based on their names. *See id.* at 9. Rather, it appears Defendants may be following a

11

"name and shame" policy previously announced by a DOJ official. Ryan J. Reilly, *DOJ 'weaponization' group will shame individuals it can't charge with crimes, new head says*, NBC News (May 13, 2025), https://www.nbcnews.com/politics/justice-department/doj-weaponization-group-will-shame-individuals-cant-charge-crimes-new-rcna206553 (quoting DOJ official as stating "we will name them, and in a culture that respects shame, they should be people that are ashamed"). To the extent pseudonymity frustrates Defendants' aim in that regard, it cannot be considered legally cognizable prejudice under the pseudonymity analysis. *See, e.g., In re Sealed Case*, 971 F.3d 324, 326 n.1 (D.C. Cir. 2020) (explaining that this factor is "not implicated" when defendant knows plaintiff's identity). Instead, it should warrant concern that the government is improperly seeking to deter Plaintiffs and others from attempting to vindicate their constitutional rights against Defendants' unlawful actions.

The government faces no prejudice from pseudonym protection. Plaintiffs face severe, documented, and potentially irreversible harm if denied it.

## II. There Is No Need for Clarification of the Pseudonymity Order, and Defendants' Photographs Would Invite Legal Error

As an alternative to lifting the pseudonymity order, ECF No. 5, Defendants request that the Court "modify or clarify [it] to confirm that it does not preclude the use of [the] photographs" discussed above purportedly showing the events of June 4, 2020. Defs.' Rule 10(a) Mot. at 9. Defendants have also specifically referenced the photographs, and their unredacted Rule 10(a) Motion, in their motion to dismiss. *See* ECF No. 18 at 6.

The Court should decline Defendants' request to rule that the photographs can be publicly filed under the pseudonymity order. First, as Defendants themselves recognize, inclusion of the photographs in court filings could enable bad actors to use technological tools to identify Plaintiffs, Defs.' Rule 10(a) Mot. at 6, 9, completely undermining pseudonymity. And the photographs

depict FBI agents who are not parties to this suit and yet would be subject to identification via the same means. Second, Defendants' request is premature. As explained above, the photographs cannot be considered at the motion-to-dismiss stage where the only question is whether Plaintiffs' Amended Complaint states a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants can renew their requests at a later stage in the litigation if desired. *See, e.g., Does I Thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1069 (9th Cir. 2000) ("We recognize that the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses."). Once the state of the record and the nature of the parties' arguments are clear, the Court will be situated to evaluate whether the photographs have become relevant and, if so, whether they should be filed under seal, redacted or blurred, or subject to other protective measures.

### III. The Court Should File Defendants' Unredacted Rule 10(a) Motion Under Seal, and the Court Should File Defendants' Redacted Rule 10(a) Motion on the Public Docket

Defendants seek leave to file the unredacted version of their Rule 10(a) Motion, ECF No. 15-3, under seal, but only on a temporary basis, intending ultimately to include the redacted information in public court filings on the ground that such information will "provide vital context and aid the public in assessing the merits of Plaintiffs' claims." Defs.' Mot. Seal at 3. For all the reasons stated herein, the photographs and URLs in Defendants' unredacted Rule 10(a) Motion are irrelevant at this phase of the litigation, would be prejudicial to Plaintiffs and inconsistent with the pseudonymity order if filed publicly, and additionally involve the privacy interests of former FBI agents who are non-parties.

Sealing is appropriate in light of the factors delineated in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). More specifically, the factors counseling in favor of sealing include:

the appropriateness of pseudonymity in this case; the lack of need for public access to the additional information, that is, photographs and URLs, contained in Defendants' unredacted Rule 10(a) Motion; the limited extent of prior public access to the additional information; Plaintiffs' objection to disclosure of that additional information; the strength of Plaintiffs' privacy interests and likelihood of prejudice; and the lack of any legitimate purpose for public filing of that information. *See id.* at 317-24.

Plaintiffs concur in the public filing of Defendants' redacted Rule 10(a) Motion, ECF No. 15-4.

\*   \*   \*

Having fired Plaintiffs summarily and denied them a fair opportunity to defend themselves, Defendants now seek an order that would subject Plaintiffs and their families to a serious risk of retaliatory harm for challenging that action. Defendants may hope to deter others from seeking judicial relief from the unlawful campaign of "summary dismissals" that continues to roil the FBI. But Defendants have not raised any valid basis to lift the well-grounded pseudonymity order protecting Plaintiffs.

**CONCLUSION**

For the foregoing reasons, and those articulated in Plaintiffs' Motion for Leave to Proceed Under Pseudonyms, ECF Nos. 2, 12-1, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel Compliance with Rule 10(a), or for Modification/Clarification of Pseudonymity Requirements, ECF No. 15-4, thereby leaving in place the Court order allowing Plaintiffs to proceed pseudonymously, ECF No. 5. Plaintiffs also respectfully request that the Court grant Defendants' Motion for Leave to File Under Seal, ECF No. 15, by (1) filing under seal

Defendants' unredacted Rule 10(a) Motion, ECF No. 15-3, and (1) filing on the public docket the redacted version of Defendants' Rule 10(a) Motion, ECF No. 15-4.

Dated: March 9, 2026                                   Respectfully submitted,

*/s/ John David Kuchta*
JOHN DAVID KUCHTA (D.D.C. No. FL00158)
JOHN KUCHTA LAW, PLLC
12481 Brantley Commons Court
Fort Myers, FL 33907
239-690-6080
jkuchta@robertfoleylaw.com

*Counsel for Plaintiff Jane Doe 6*

*/s/ Mary L. Dohrmann*
MARY L. DOHRMANN (D.C. Bar No. 90042577)
ELIZABETH D. COLLERY (D.C. Bar No. 422246)
SYDNEY FOSTER (D.C. Bar No. 982340)
WASHINGTON LITIGATION GROUP
1717 K Street, NW, Suite 1120
Washington, D.C. 20006
202-521-8750
mdohrmann@washingtonlitigationgroup.org

*Counsel for Plaintiffs Jane Does 1-9 and John Does 1-3*