UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOES 1-9, *et al.*,<br><br>       Plaintiffs,<br><br>     v.<br><br>KASHYAP P. PATEL,<br>Director, Federal Bureau of Investigation,<br>*et al.*,<br><br>       Defendants. | Civil Action No. 25-4258 (TNM) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL COMPLIANCE WITH RULE 10(A), OR FOR MODIFICATION/CLARIFICATION OF PSEUDONYMITY REQUIREMENTS**

Defendants Kashyap P. Patel, Director, Federal Bureau of Investigation ("FBI"); the FBI;

Pamela J. Bondi, Attorney General of the United States; the United States Department of Justice;

the Executive Office of the President; and the United States of America, respectfully submit this

reply in further support of their Motion to Compel Compliance with Rule 10(a) (ECF No. 15-3;

"Rule 10 Mot.").

**INTRODUCTION**

Plaintiffs insist that pseudonymity is warranted—but cannot dispute that former FBI agents

routinely sue the government using their real names; photographs of Plaintiffs—which undermine

Plaintiffs' characterization of their actions as heroic—have been widely circulated online; at least

two Plaintiffs have been publicly identified; those Plaintiffs have not identified any specific

instances of threats or harassment; Plaintiffs generally identify only two random internet

comments as purported examples of such harassment; Plaintiffs lack the vulnerability or victim

status that is typically the hallmark of pseudonymous parties; the nature of Plaintiffs' claims

against government officials creates a heightened interest in transparency; and pseudonymity (especially insofar as it might preclude the use of the photographs) prevents the government from telling its side of the story. Given all those pertinent circumstances, Plaintiffs do not merit the "rare dispensation" of "pseudonymous status," particularly given that they cannot overcome "the presumption against pseudonymity." *Doe v. Hill*, 141 F.4th 291, 293 (D.C. Cir. 2025) (quoting *In re Sealed Case*, 971 F.3d 324, 328 (D.C. Cir. 2020)); *see also Plaintiff v. Verizon Commc'ns, Inc.*, Civ. A. No. 22-0018 (BAH), 2022 WL 168324, at *2 (D.D.C. Jan. 19, 2022) (explaining that the presumption is "weighty" (quoting *In re Sealed Case*, 971 F.3d at 326)). There is certainly no basis to bar Defendants from countering Plaintiffs' one-sided narrative by using photographs that have already circulated widely online.

**ARGUMENT**

**I.    Plaintiffs Should Not Be Permitted To Proceed Pseudonymously**

Plaintiffs' response does not undermine the conclusion that the relevant factors weigh heavily against pseudonymity.

First, Plaintiffs' privacy interests are weak given that former FBI agents routinely sue under their real names and at least two Plaintiffs' identities have already been published, along with widely circulated photographs of Plaintiffs. *See* Rule 10 Mot. at 6-7. Plaintiffs' interests in proceeding pseudonymously are obviously diminished where their identities have already been revealed or could readily be discerned. *See Doe v. Baabrera*, 307 F.R.D. 1, 9 (D.D.C. 2014) (where a plaintiff's "true identity remain[ed] hidden from the public," her "interest in maintaining her anonymity remain[ed] a valid concern").

Plaintiffs' contrary arguments are without merit. As former agents, Plaintiffs cannot conflate themselves with active agents who have "a legitimate interest in preserving the secrecy of matters" relevant to their work. Opposition, ECF No. 19 ("Opp."), at 4. Whether Plaintiffs' "past

assignments involve dangerous individuals and national security matters," Opp. 3-4, does not move the needle. That would apply to many former law enforcement officers who have nevertheless chosen to proceed using their real names when suing their former employers. Plaintiffs have a heavy burden to establish entitlement to pseudonymous status, *Hill*, 141 F.4th at 293; *Verizon*, 2022 WL 168324, at *2, yet the link between this litigation and any dangerous individuals and national security matters remains entirely unexplained: Why would knowing Plaintiffs' names in the context of this case reveal specific, let alone sensitive, details about the individuals and matters they previously worked on? Similarly, Plaintiffs contend that "[i]f someone has been publicly identified in court filings . . . , it is difficult for them to act covertly under a different identity." Opp. 7. But Plaintiffs' likenesses have already been identified in photographs, so it is unclear why further publicization of their names would impact any covert work under assumed names. In any event, Plaintiffs refuse to explain the nature of any hypothetical covert work (let alone in a manner that would allow the Court to weigh this factor on an individual basis). *See* Opp. 8.

Instead, all Plaintiffs muster is a facially inapt comparison to a complaint brought by the United States to challenge a California law that effectively banned federal agents from working anonymously and undercover. *See* Complaint ¶¶ 4-5, *United States v. California et al.*, Civ. A. No. 25-10999 (C.D. Cal.) (Nov. 17, 2025) (California statute would ban federal law enforcement officers from wearing masks and require officers to display identification). Requiring Plaintiffs to use their real names in this litigation is obviously nothing like requiring all law enforcement officers to reveal their identities while conducting dangerous operations.

Beyond that, Plaintiffs appear to rely on Defendants' characterizations of Plaintiffs' actions at the heart of this litigation. *See* Opp. 4-5. Plaintiffs argue they must proceed pseudonymously

because otherwise they will be "unfairly brand[ed]" as having "kneeled in apparent solidarity with or acquiescence to anti-law-enforcement rioters." Opp. 4 (internal quotation marks omitted). But Plaintiffs cannot circularly use Defendants' disagreement with Plaintiffs' factual and legal narrative to support Plaintiffs' ability to assert that narrative pseudonymously. To the extent Plaintiffs' frame Defendants' subjective statements as "false[]," Opp. 4, the objective photographs strongly suggest otherwise. And Plaintiffs' desire "to avoid the annoyance and criticism that may attend any litigation" is not enough. *Verizon*, 2022 WL 168324, at *3 (quoting *In re Sealed Case*, 971 F.3d at 326).

Second, identification does not pose a particularized risk of retaliatory physical or mental harm to Plaintiffs. Once again, Plaintiffs rely on risks that would apply to anyone working at the FBI during the relevant period, regardless of the nature of their work or the litigation at issue. *See* Opp. 8-9 (discussing inapposite events, like a defendant who was convicted of plotting to kill agents who investigated him). Plaintiffs still cannot explain why anti-law-enforcement-activists would target them specifically. To the contrary, anti-law-enforcement outlets have celebrated them as "iconic." *See* Rule 10 Mot. 4. Plaintiffs appear to have abandoned their reliance on "two troubling comments posted on national news websites." Motion to Proceed under Pseudonym, ECF No. 2, at 6. The dearth of any actual threats or harassment—including as to two Plaintiffs who have already been publicly identified—underscores the lack of any special risk of retaliatory harm here.

Third, Plaintiffs' age does not support pseudonymity. Given Plaintiffs' failure to show substantial privacy interests or special risks of retaliatory harm with respect to themselves, they cannot establish such risks with respect to more attenuated third parties, including any children who may have uncommon last names. Plaintiffs appear to believe that Defendants are

"request[ing] that Plaintiffs provide . . . details" about their children in court filings. Opp. 10. Not so. Defendants have merely pointed out that, given the strong presumption *against* pseudonymity, Plaintiffs' blunderbuss reliance on the fact that *some* of them have children, and *some* of them have uncommon last names, cannot support pseudonymous status for any, let alone all, Plaintiffs.

Fourth, the identities of the opposing parties do not support pseudonymity. Plaintiffs do not meaningfully defend the Court's tentative order's statement that this factor "usually favors pseudonymity when a plaintiff sues the government." Order, ECF No. 5, at 4. Instead, they criticize Defendants for relying on a law review article written by arguably the foremost legal scholar on pseudonymity issues. *See* Opp. 10 (citing Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1392 (2022)). But they cannot dispute that many courts have disagreed with this Court's tentative ruling and "take[n] the view that . . . the interest in openness is heightened because Defendants are public officials and government bodies." Volokh, *supra* at 1392. That includes this Court, which went even further and stated that "the law is well-settled that 'there is a heightened public interest when an individual or entity files a suit against the government.'" *Plaintiff v. Verizon Commc'ns, Inc.*, Civ. A. No. 22-18, 2022 WL 168324 (BAH), at *4 (D.D.C. Jan. 19, 2022) (quoting *In re Sealed Case*, 971 F.3d at 329). And Plaintiffs' argument that pseudonymity is warranted in cases against the government "involv[ing] topics that are seen as private or as risking improper retaliation," Opp. 10, conflates this factor with the factors already discussed.

Fifth, allowing Plaintiffs to proceed pseudonymously would severely prejudice Defendants, who "have a powerful interest in being able to respond publicly to defend their reputations [against plaintiff's allegations]." Volokh, *supra*, at 1380 (quoting *Doe v. Ind. Black Expo., Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996)). A plaintiff "cannot use his privacy interests

as a shelter from which he can safely hurl . . . accusations without subjecting himself to public scrutiny, even if that public scrutiny includes scorn and criticism." *Id.*; *see also Doe v. Rogers*, Civ. A. No. 12-1229 (TFH), 2023 WL 1470007, *3 (D.D.C. Feb. 2, 2023) ("In the plaintiff's filings in connection with this dispute alone, the plaintiff disparages government employees while proceeding pseudonymously. . . . [T]his factor thus weighs in favor of disclosure.")

Plaintiffs seek to use this litigation to tell their side of the story—*i.e.*, a story that was unfolding much like the lead-up to the Boston Massacre until Plaintiffs channeled George Washington and kneeled in a tactical masterstroke that effectively suppressed a riot. *See* Amended Complaint, ECF No. 17, ¶¶ 7-10. Yet Plaintiffs wish to do so while completely insulated from public scrutiny—and while depriving the government of the ability to tell its side of the story using photographs of the events. That prejudice to the government cuts against pseudonymity.

## II.    In The Alternative, The Court Should Clarify That Defendants May Include Unredacted Photographs In Public Filings

There is no basis to forbid Defendants from including publicly available and widely circulated photographs in public filings. Plaintiffs repeatedly argue that such pictures are "immaterial" at "the motion-to-dismiss stage." Opp. 11. But Defendants are seeking clarification generally, not for motion-to-dismiss briefing specifically. Regardless, it is commonplace for parties to include relevant information for rhetorical purposes—including to tell their side of the story—in briefing at any stage.

Notably, Plaintiffs' claim that allowing Defendants to include the photographs in Defendants' filings would "completely undermin[e] pseudonymity," Opp. 12, confirms there is no basis for pseudonymity in the first place. The photographs have already been published by major news outlets with millions of readers, along with other websites and social media accounts. So if it is true, as Plaintiffs contend, that publication of the photographs would "enable bad actors to use

technological tools to identify Plaintiffs," Opp. 12, any privacy interests Plaintiff might assert have already been undermined, and so the photographs appearing on this Court's docket would make no appreciable difference.  Plaintiffs' assertion that even links to mainstream news articles containing the photographs would "unnecessarily endanger Plaintiffs," Opp. 1-2, only highlights the absurdity of their position.  At a minimum, then, the Court should modify or clarify the Court's tentative Order (ECF No. 5) to confirm that it does not preclude the use of the photographs in Defendants' filings.

## CONCLUSION

The Court should grant this motion and order Plaintiffs to re-file their amended complaint in compliance with Rule 10(a) (without altering the briefing schedule on the pending motion to dismiss).

Dated: March 23, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

MICHAEL WESIBUCH, Senior Counsel
ANNA EDWARDS, Counsel
Office of the Associate Attorney General

JEANINE FERRIS PIRRO
United States Attorney

By: _____ */s/ Andrew J. Vaden*
ANDREW J. VADEN
Assistant United States Attorney
DC Bar No. 1044860
601 D Street, NW
Washington, DC 20530
(202) 252-2437

*Attorneys for the United States of America*