**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JANE DOES 1–9**, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>**KASHYAP P. PATEL**, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:25-cv-4258 (TNM) |

## <u>MEMORANDUM ORDER</u>

Several former Federal Bureau of Investigation agents challenge their recent terminations.  They allege that the agency fired them in retaliation for kneeling during protests in Washington, D.C., several years ago.  The ideological valence of the protests, plus Government officials' alleged imputation of those values to Plaintiffs, generate competing public interest and privacy concerns.

Balancing those considerations, Chief Judge Boasberg concluded early in this litigation that Plaintiffs could use pseudonyms.  *See* Mot. to Proceed Under Pseudonym, ECF No. 2; Mem. Op. & Order, ECF No. 5.  Now, the Court considers the Government's request to compel Plaintiffs to use their real names.  Mot. to Compel, ECF No. 15-3.  The Government also asks the Court to clarify whether it can file photos of Plaintiffs at the protests on the public docket. *Id.* at 3.

Because the Government shows that two Plaintiffs have been publicly identified, the Court grants the Government's motion to compel as to those Plaintiffs.  The remaining Plaintiffs may continue under pseudonyms.  That decision does not, however, prevent the Government from filing already public photos on the docket.

1

## I.

Plaintiffs are twelve former FBI agents experienced in counterterrorism and counterintelligence.  *See* Am. Compl. ¶¶ 20–31, ECF No. 17.  In June 2020, the FBI deployed them to downtown Washington to provide security amid anti-law enforcement protests.  *Id.* ¶¶ 60, 62–63.  Sometime during their patrol, Plaintiffs stood "near the National Archives when a sea of people began moving past them."  *Id.* ¶ 70.  The crowd became agitated, Plaintiffs say, and focused on the agents.  *Id.* ¶ 71.  Plaintiffs then knelt on one leg.  *Id.* ¶¶ 75–76.  According to them, that gesture was "associated with de-escalations between law enforcement officers and their communities" during the Black Lives Matter protests.  *Id.* ¶ 8.  The crowd eventually moved on without conflict.  *Id.* ¶ 76.

Some critics of the protestors publicly denounced the agents.  They understood the agents' kneeling as support for the protests and branded the maneuver a "left-wing political act."  *See, e.g.*, Am. Compl. ¶¶ 8, 90.  Reporters photographed the kneeling agents and later investigated some of them.  *See, e.g.*, Mot. to Compel at 4–5 (reproducing photos and collecting reporting).  The agents also drew criticism on social media.  *See, e.g.*, Am. Compl. ¶ 91 (alleging that "then-former President Trump posted on social media about Plaintiffs and their colleagues who kneeled on June 4, 2020").

More than five years after the protests, FBI Director Kash Patel fired Plaintiffs.  *Id.* ¶ 112.  They claim that he did so in retaliation for their actions during the protests.  *See, e.g., id.* ¶¶ 127, 130.  They filed this lawsuit, challenging their terminations under the First and Fifth Amendments.  *Id.* ¶¶ 147–202.  At the outset, Plaintiffs moved to proceed under pseudonyms.  Mot. to Proceed Under Pseudonym.  They argued that public identification would expose them and their families to a risk of "doxing, SWATting, harassment, and physical harm."  *Id.* at 2.

They also feared compromising their ability to perform "sensitive duties if reinstated to their positions." *Id.*

Chief Judge Boasberg granted Plaintiffs' request. Mem. Op. & Order; *see* LCvR 57.14 (directing the Chief Judge to decide "motion[s] to file a pseudonymous complaint" in "any case not already assigned"). His reasoning focused on the safety risks to Plaintiffs. Mem. Op. & Order at 3–4.

Now, the Government moves to compel Plaintiffs to use their real names. *See* Mot. to Compel. The Government also asks the Court to clarify that the pseudonymity order does not prohibit "unredacted photographs of the events at issue." *Id.* at 2. To support those requests, the Government's motion includes example photos and cites articles naming some Plaintiffs. *See id.* at 4–5, 7. Because Plaintiffs objected to public disclosure of that information, the Government moved to seal its motion pending the Court's review. Mot. to Seal, ECF No. 15.[1] The Court focuses now on the motion to compel, leaving the sealing request for another day.

## II.

Our judicial system operates on "a presumption in favor of disclosure, which stems from the general public interest in the openness of governmental processes, and, more specifically, from the tradition of open judicial proceedings." *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019) (cleaned up). An exception to that norm frames the parties' dispute.

Although a complaint normally must "name all the parties," Fed. R. Civ. P. 10(a), courts sometimes permit pseudonyms. A party seeking to proceed pseudonymously "bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences

---

[1] The Government filed a redacted version of its motion to compel on the public docket. *See* Unredacted Mot. to Compel, ECF No. 15-4.

that would likely befall it if forced to proceed in its own name." *In re Sealed Case*, 971 F.3d 324, 326 (D.C. Cir. 2020).  To determine whether the movant shoulders its burden, the Court "balance[s] the litigant's legitimate interest in anonymity against countervailing interests in disclosure." *In re Sealed Case*, 931 F.3d at 96.

Five "guideposts" inform that analysis.  *Id.* at 97.  They are: " [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; [3] the ages of the persons whose privacy interests are sought to be protected; [4] whether the action is against a governmental or private party; and, relatedly, [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *Id.*

### III.

Applying that test here, the Court permits pseudonymity for all Plaintiffs except Jane Does 5 and 8.  Chief Judge Boasberg explained why Plaintiffs carried their burden a few months ago.  *See* Mem. Op. & Order at 3–5.  The Government's new evidence that reporters identified Jane Does 5 and 8 changes the calculus for these women.  They must use their real names if they wish to proceed.  As for the remaining Plaintiffs, they may remain anonymous.

Start with Jane Does 5 and 8.  Several online media outlets identified them by name and title as agents who kneeled during the protests.  *See* Mot. to Compel at 7 (collecting reporting). Plaintiffs stress that a prior identity disclosure does not necessarily preclude pseudonymity.  *See, e.g.*, *EEOC. v. Spoa, LLC*, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (permitting pseudonymity even though the plaintiff previously filed an administrative charge "in her own

4

name" because "the EEOC investigative record is not as widely available" as federal court documents).  True enough.  But this case involves no stray disclosures of the sort Plaintiffs paint.  Multiple platforms named Jane Does 5 and 8 in connection with the protests.  *See* Mot. to Compel at 7.  That publicity is a pseudonymity problem.  *Cf. Raiser v. Church of Jesus Christ of Latter-Day Saints*, 182 F. App'x 810, 811 (10th Cir. 2006) ("In cases where the sensitive information has already been disclosed during a party's prior litigation under its real name, the social interest in allowing a party to proceed anonymously is limited."); *Doe v. Rogers*, 2023 WL 1470007, at *2 (D.D.C. Feb. 2, 2023) (noting prior public disclosure about the "facts underlying [the] case" as a reason for retracting pseudonymity).

Walk through the pseudonymity guideposts to understand why.  The first two factors consider the harm that anonymity prevents.  *See In re Sealed Case*, 931 F.3d at 97.  For these factors, Plaintiffs emphasize retaliation risk and the importance of anonymity for an FBI agent.  *See* Mot. to Proceed Under Pseudonym at 7–8; *see also* Mem. Op. & Order at 3–4.  Existing reporting undermines these concerns.  Take Plaintiffs' fear that they will be targeted given the rise in anti-law enforcement attacks.  *See* Opp'n at 3–4, ECF No. 19; Mot. to Proceed Under Pseudonym at 2, 5.  That general evidence does not translate to Plaintiffs' lived experience.  Though their names are public, Jane Does 5 and 8 cite no past harm or threats.  Without any specific reason to believe that will change, the Court cannot conclude that Plaintiffs have shown a "credible risk of retaliatory physical or mental harm." *J.W. v. District of Columbia*, 318 F.R.D. 196, 200 (D.D.C. 2016).  So too for Plaintiffs' concern that being "publicly identified in court filings" would make it "difficult for them to act covertly under a different identity" if reinstated.  Opp'n at 7.  Pseudonyms offer little help because Plaintiffs have been outed as agents.  *See* Mot.

to Compel at 7.  So the Court cannot conclude that Jane Does 5 and 8 have shown that either the first or second factor favors continued pseudonymity.

The third factor—the movant's age—likewise weighs against pseudonymity.  *See In re Sealed Case*, 931 F.3d at 97.  This "factor militates against proceeding pseudonymously when the movant is an adult."  *Roe v. Doe*, 319 F. Supp. 3d 422, 428 (D.D.C. 2018).  Chief Judge Boasberg thought that this factor "provides modest weight for Plaintiffs," Mem. Op. & Order at 4, but only because he thought that Plaintiffs faced credible threats, *see id.*  He credited Plaintiffs' representation that some Plaintiffs had minor children who might be targeted alongside their parents.  *Id.*  It is unclear whether Jane Does 5 and 8 have children and the Court is disinclined to consider those non-party children under the third factor.  *See* Reply at 5, ECF No. 21 (faulting Plaintiffs for failing to identify which Plaintiffs have children).  But, in any event, the Court cannot find a derivative harm risk without a credible risk to Jane Does 5 and 8.

As for the remaining factors, they tilt in Plaintiffs' favor, but do not carry the day.  The fourth factor favors pseudonymity because Plaintiffs seek individualized relief against the Government.  *See* Mem. Op. & Order at 4.  And the fifth factor weighs in Plaintiffs' favor because the Government already knows the identity of Jane Does 5 and 8.  *See id.* at 5.  But those two factors alone do not satisfy Plaintiffs' "weighty burden."  *In re Sealed Case*, 971 F.3d at 326.  The Court cannot justify pseudonymity given the reporting about Jane Does 5 and 8.  So the Court grants the Government's motion as to these Plaintiffs.  If they wish to proceed, they must use their real names.  *See* Fed. R. Civ. P. 10(a).

The same is not true for the other Plaintiffs.  Nothing suggests that these Plaintiffs are publicly named in reporting about the protests or their terminations.  Nor does the Government offer any other persuasive reason for departing from Chief Judge Boasberg's analysis.  *See* Mem.

Op. & Order at 3–5.  Only the third factor demands more ink.  As the Court sees things, Plaintiffs are adults and the third factor limits its concern to "the *party's* age." *Doe v. Hill*, 141 F.4th 291, 293 (D.C. Cir. 2025) (emphasis added); *see also Roe*, 319 F. Supp. 3d at 428 (recognizing that this factor typically disfavors pseudonymity for an adult plaintiff).  So that factor does not favor anonymity.  But the Chief Judge gave this factor only "modest weight." Mem. Op. & Order at 4.  And the Court sees no reason to depart from the rest of his analysis. *See id.* at 3–4.

Though the Court concludes that most Plaintiffs can remain anonymous, it clarifies that this decision does not prevent the Government from filing public photos of the protests.  *See* Reply at 6 (requesting this clarification).  Unlike Plaintiffs' names, those photos have been widely shared without apparent problem.  *See* Mot. to Compel at 5 & nn. 1–3 (listing articles). The Court notes, however, that it considers only the facts before it.  Separate consideration may be necessary if the Government wishes to file nonpublic images or images that identify a pseudonymous Plaintiff by name.  The Court also leaves open whether these images would be admissible at trial.  *See* Fed. R. Evid. 403.

## IV.

To recap, Jane Does 5 and 8, whose identities are public, must use their real names.  But the other Plaintiffs may continue under pseudonyms.  The Government may, however, include already public photos on the docket.

Cognizant that these holdings may change how the parties proceed, the Court defers consideration on the pending motions to seal, ECF No. 15, and to dismiss, ECF No. 18.  The Court also orders the parties to submit a joint status report in 14 days about next steps.  Among the issues that report should address are: (1) whether Jane Does 5 and 8 will proceed with this

lawsuit, (2) whether Plaintiffs will file a Second Amended Complaint revealing Jane Doe 5's and

Jane Doe 8's identities, and (3) whether new dismissal briefing is necessary in light of their

decisions.  If the parties wish to proceed with the existing dismissal briefing, they should also

consider whether supplemental briefing on the Supreme Court's decision in *Trump v. Slaughter*,

No. 25-332, 2026 WL 1855612 (U.S. June 29, 2026), would be helpful.

In light of the foregoing, it is hereby

**ORDERED** that Plaintiffs' [15-3] Motion to Compel is **GRANTED IN PART** as to

Plaintiff Jane Doe 5, Plaintiff Jane Doe 8 and **DENIED IN PART** as to all other Plaintiffs; it is

further

**ORDERED** that the parties file a Joint Status Report within 14 days of this Order

proposing next steps in this case.

**SO ORDERED.**

Dated:  July 31, 2026

TREVOR N. McFADDEN, U.S.D.J.