UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANE DOES 1-9, *et al.*,

Plaintiffs,

v.

KASHYAP P. PATEL,
Director, Federal Bureau of Investigation,
*et al.*,

Defendants.

Civil Action No. 25-4258 (TNM)

**UNDER SEAL**

**DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH RULE 10(A), OR FOR MODIFICATION/CLARIFICATION OF PSEUDONYMITY REQUIREMENTS, AND MEMORANDUM IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure 10(a), Defendants Kashyap P. Patel, Director, Federal Bureau of Investigation ("FBI"); the FBI; Pamela J. Bondi, Attorney General of the United States; the United States Department of Justice; the Executive Office of the President; and the United States of America, respectfully move to compel Plaintiffs to comply with Rule 10(a)'s requirement that the complaint "name all the parties" such that Plaintiffs are no longer proceeding pseudonymously. In the alternative, Defendants move for modification or clarification of the Court's tentative Order (ECF No. 5) permitting Plaintiffs to proceed pseudonymously. Defendants request confirmation that Defendants may file unredacted photographs of the events at issue on the public docket. Counsel for the parties have met and conferred regarding this motion. Plaintiffs oppose the motion.

## INTRODUCTION

In federal litigation, "pseudonymous status" is a "rare dispensation." *Doe v. Hill*, 141 F.4th 291, 293 (D.C. Cir. 2025) (quoting *In re Sealed Case*, 971 F.3d 324, 328 (D.C. Cir. 2020)). But in this case, the Court—without the benefit of Defendants' position and subject to further ruling by the assigned judge—tentatively granted Plaintiffs pseudonymous status. The Court should now revoke that status.

Plaintiffs cannot carry their burden to overcome "the presumption against pseudonymity" under the relevant factors. *Hill*, 141 F.4th at 293. That is especially true because at least two of Plaintiffs' identities have been disclosed online—and those Plaintiffs do not claim to have experienced any particularized retaliatory physical or mental harm. Beyond that, photographs of the incident at the heart of this case have been published by major news outlets and circulated on the internet and social media—diminishing any privacy interests Plaintiffs might otherwise have. Relatedly, allowing Plaintiffs to proceed pseudonymously would be manifestly unfair to the government and undermine the public interest. The Complaint (ECF No. 1) ("Compl.") provides

the public with a version of events that is arguably at odds with photographs of the events. If Defendants are not allowed to publicly defend themselves, including by filing documents containing those unredacted photographs, the public may have a distorted understanding of what occurred. Accordingly, this Court should not allow Plaintiffs to proceed pseudonymously. In the alternative, the Court should clarify that Defendants may file unredacted documents including the photographs.

## FACTUAL BACKGROUND

In late May and early June 2020, rioters wreaked havoc on the District of Columbia under the guise of "highlight[ing] concerns about perceived racial bias and . . . call[ing] for police reforms." Compl. ¶ 4. Plaintiffs are former FBI agents who were deployed in Washington D.C. to help quell "violent unrest" that included "rioting, assaults, looting of uninvolved businesses, and widespread property damage." *Id.* ¶¶ 4-5; *see also id.* ¶ 64. While deployed, Plaintiffs "assum[ed] a kneeling posture"—the rioters' signature gesture. *Id.* ¶ 8. Defendant FBI Director Kashyap P. Patel later removed them. *Id.* ¶ 109. Plaintiffs challenge their terminations and have sought to do so pseudonymously. (ECF No. 2). The Chief Judge granted Plaintiffs' motion "subject to any further consideration by the United States District Court Judge to whom this case is randomly assigned." (ECF No. 5).

Much of the complaint consists of Plaintiffs' questionable narrative about what happened when they kneeled. Plaintiffs allege that they were "confronted by a mob" that "charged towards" them until they were "backed up against a wall" with "no ability to leave the scene safely" as the rioters "directed increasingly agitated shouting and gesturing towards them." *Id.* ¶¶ 7, 69. In Plaintiffs' view, the confrontation was "comparable" to the lead-up to the Boston Massacre, where British soldiers "fearfully fired their weapons into a crowd." *Id.* ¶ 7. "Some in the mob began

shouting for the FBI personnel to kneel." *Id.* ¶ 70. Plaintiffs appear to assume that their only options were to obey the rioters or shoot them: Rather than "repeat the mistakes of the British soldiers," Plaintiffs allegedly "made a considered tactical decision" and "avoided triggering violence" by kneeling. *Id.* ¶¶ 7-8.

Photographs show Plaintiffs kneeling. The backdrop, body language, and facial expressions appear to contradict Plaintiffs' narrative.





These photographs were published by major outlets and circulated widely online, including in articles about this litigation. *See, e.g.*, James A. Gagliano, *The FBI Agents Association rewarded agents who took a knee in front of BLM, proving the rot isn't just at the top*, New York Post (Oct. 19, 2022);[1] Eric Tucker, *12 FBI agents fired for kneeling during racial justice protest sue to get their jobs back*, AP News (Dec. 8, 2025).[2] A CNN article referred to one of the photographs as "iconic." Evan Perez, *FBI fires agents seen kneeling in iconic photo during George Floyd protests five years ago*, CNN (updated Sept. 27, 2025).[3] The photographs show at least some of Plaintiffs' faces and/or other identifying characteristics.

---

1 *Available at* https://nypost.com/2022/10/19/fbi-agents-association-rewarded-agents-who-took-a-knee-in-front-of-blm/.

2 *Available at* https://apnews.com/article/fbi-george-floyd-kash-patel-72ac540b4d5afd90d6be3199ac808630.

3 *Available at* https://www.cnn.com/2025/09/26/politics/fbi-agents-fired-blm-george-floyd-protests.

## LEGAL STANDARD

The judicial system runs on a "customary and constitutionally-embedded presumption of openness." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995). "The 'right of public access' extends to the names of litigants because disclosing parties' identities 'furthers [the] openness of judicial proceedings.'" *Tolton v. Day*, No. 19-945, 2019 WL 4305789, at *1 (D.D.C. Sept. 11, 2019) (quoting *Doe v. Pub. Citizen*, 749 F.3d 246, 270, 273 (4th Cir. 2014)). "Consistent with this transparency, the Federal Rules of Civil Procedure and this Court's Local Civil Rules require that complaints set forth the names of parties." *Id.* (citing Fed. R. Civ. P. 10(a); LCvRs 5.1(c)(1), 11.1).

"Requiring parties to litigate under their real names serves important values." *Hill*, 141 F.4th at 293. "Accurate party names allow citizens to evaluate the nature of the claims raised and the interests at stake, to assess the real-world aftermath of a suit, and to determine for themselves whether justice was done." *Id.* (internal quotation marks omitted). "Knowing the identity of parties also makes it easier for citizens to investigate abuses of the judicial process . . . , and it promotes the appearance of fairness." *Id.* For those and other reasons, "[f]ederal courts may grant the rare dispensation of pseudonymous status" only when the moving party carries "the burden of showing that the interest in proceeding under a pseudonym outweighs the countervailing interest in full disclosure." *Id.* That burden is "weighty." *Plaintiff v. Verizon Commc'ns, Inc.*, No. 22-cv-18, 2022 WL 168324 (D.D.C. Jan. 19, 2022) (quoting *In re Sealed Case*, 971 F.3d at 326).

To determine "whether the presumption against pseudonymity has been overcome," courts conduct a "flexible and fact driven inquiry" guided by "five factors [that] are non-exhaustive." *Hill*, 141 F.4th at 293 (internal quotation marks omitted). Those factors are "(1) the strength and sensitivity of the privacy interests at stake, (2) the risk of retaliation against a named plaintiff, (3)

the sensitivity of the party's age, (4) the identity of the opposing party, and (5) the risk of unfairness to the opposing party." *Id.*

## ARGUMENT

### I. Plaintiffs Should Not Be Permitted To Proceed Pseudonymously

The relevant factors do not support pseudonymous status.

First, the privacy interests at stake are weak. At least two Plaintiffs' identities (Jane Does 5 and 8) have already been published online. *See* Fred Lucas, *Exclusive: 2 FBI Agents Who Knelt at BLM Rally Gained Promotions*, The Daily Signal (April 17, 2023).[4] And the widely circulated photographs diminish all Plaintiffs' privacy interests, because members of the public can likely discover some or all of their identities. Plaintiffs' desire to avoid further public scrutiny—*i.e*, "to avoid the annoyance and criticism that may attend any litigation"—cannot justify their pseudonymous status. *Verizon*, 2022 WL 168324, at *3 (quoting *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019)).

The Court's contrary tentative conclusion rested largely on the premise "that FBI agents—unlike most litigants—have a longstanding and legitimate interest in preserving the confidentiality of their identities when disclosure could subject them to harassment or danger." Order (ECF No. 5) at 3. Of course, protecting the identities of law enforcement officers who are just doing their jobs will often serve important interests. But terminated FBI personnel who affirmatively bring lawsuits routinely do *not* proceed pseudonymously. *See, e.g.*, *Langeman v. Garland*, 88 F.4th 289

---

[4] *Available at* https://www.dailysignal.com/2023/04/17/exclusive-2-fbi-agents-who-knelt-at-blm-rally-gained-promotions/.

Jane Doe 5's identity has been more widely circulated. *See, e.g.*, Cami Mondeaux, *Gaetz demands answers on FBI agents seen kneeling at Black Lives Matter protests* (June 29, 2023), *available at* https://www.washingtonexaminer.com/news/2576356/gaetz-demands-answers-on-fbi-agents-seen-kneeling-at-black-lives-matter-protests-2/.

(D.C. Cir. 2023); *Strzok v. Garland*, Civil Action No. 19-2367, 2025 WL 2723702 (D.D.C. Sept. 23, 2025); *McCabe v. Barr*, 490 F. Supp. 3d 198 (D.D.C. 2020); *Tabman v. F.B.I.*, 718 F. Supp. 2d 98 (D.D.C. 2010). So Plaintiffs' past status as agents cannot be enough. To the extent they invoke their "covert" work, Motion (ECF No. 2) at 6, 7, Plaintiffs improperly lump themselves together without meaningfully explaining the nature of their individual work. *See Hill*, 141 F.4th at 293 (each "moving party" must carry the burden of demonstrating that pseudonymity is appropriate). Plaintiffs also do not explain how pseudonymity in this case would facilitate covert work (which itself would presumably involve concealed identities) in particular.

Second, identification does not pose a risk of retaliatory physical or mental harm to Plaintiffs. Indeed, although at least two Plaintiffs' identities are already public, Plaintiffs do not allege that those or any other Plaintiffs have experienced retaliatory physical or mental harm. The Court's tentative ruling relied on "the increasing incidence of doxing and SWATing directed at law enforcement." Order (ECF No. 5) at 3. But while that trend is a real problem, it does not support pseudonymity for all former law enforcement officers in every case. There must be some particularized risk of harm given the circumstances. *See J.W. v. D.C.*, 318 F.R.D. 196, 200 (D.D.C. 2016) (explaining courts only find "risk of retaliatory harm" "where the moving party provides evidence that psychological damage or violent threats are anticipated if a party's identity is disclosed"). Here, it is unclear why radical activists who dox and/or SWAT law enforcement officers would target Plaintiffs for having kneeled in apparent solidarity with or acquiescence to anti-law-enforcement rioters. In their motion, Plaintiffs relied on two "troubling comments posted on national news websites." Mot. 6. But if internet comments are enough, practically every person who is not publicly recognizable, but who is involved in a controversial incident, will be able to claim pseudonymous status. *See Verizon*, 2022 WL 168324 (refusing to grant pseudonymity based

on, "*inter alia*, a Twitter thread"). For the same reasons, there is no special risk of danger to Plaintiffs' families or other innocent third parties.

Third, the age of the requesting parties does not support pseudonymity. This "factor militates against proceeding pseudonymously when the movant is an adult." *Roe v. Doe*, 319 F. Supp. 3d 422, 428 (D.D.C. 2018). Plaintiffs' assertion that any children of Plaintiffs with "uncommon last names" could be subject to harassment or violence is entirely speculative. *See* Mot. (ECF No. 2) at 8; Order (ECF No. 5) at 4. It also (once again) improperly lumps Plaintiffs together; they do not explain who has children or what last names are uncommon. *See* Declaration (ECF No. 13-1) at 2-3 (listing Plaintiffs).

Fourth, the identities of the opposing parties do not support pseudonymity. The Court's tentative ruling stated (based on two non-binding decisions) that this factor "usually favors pseudonymity when a plaintiff sues the government." Order (ECF No. 2) at 4. That is incorrect. Although courts in "some cases" have adopted that reasoning, "other cases take the view that . . . the interest in openness is heightened because Defendants are public officials and government bodies." Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1392 (2022) (collecting cases) (internal quotation marks omitted). For example, this Court rejected a Plaintiffs' request for pseudonymity in part because "the law is well-settled that 'there is a heightened public interest when an individual or entity files a suit against the government.'" *Verizon*, 2022 Wl 168324, at *4 (quoting *In re Sealed Case*, 971 F.3d at 329).

Fifth, allowing Plaintiffs to proceed pseudonymously would severely prejudice Defendants. "[D]efendants . . . have a powerful interest in being able to respond publicly to defend their reputations [against plaintiff's allegations]." Volokh, *supra*, at 1380 (quoting *Doe v. Ind. Black Expo., Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996)). "Part of that defense will ordinarily

include direct challenges to the plaintiff's credibility, which may well be affected by the facts [the] plaintiff prefers to keep secret." *Id.* A plaintiff "cannot use his privacy interests as a shelter from which he can safely hurl these accusations without subjecting himself to public scrutiny, even if that public scrutiny includes scorn and criticism." *Id.*

That is what Plaintiffs are attempting to do. Their complaint includes a hyperbolic, misleading account of the events at the heart of this case. Plaintiffs draw parallels between themselves and George Washington and suggest they were threatened in a manner resembling the lead-up to the Boston Massacre. *See* Compl. ¶¶ 7, 10. Defendants have a strong interest in publicly refuting those characterizations, and Plaintiffs should not be permitted to shield themselves from public scrutiny for asserting them. Yet the Court's tentative ruling did not consider the public prejudice that would result from Plaintiffs' one-sided narrative. *See* Order (ECF No. 5) at 5.

## II. In The Alternative, The Court Should Clarify That Defendants May Include Unredacted Photographs In Public Filings

Regardless of what the Court decides with respect to pseudonymity, there is no basis to forbid Defendants from including publicly available and widely circulated photographs in public filings. Because the photographs are already online, requiring Defendants to redact the photographs or file briefs under seal would serve no privacy interest and distort public perception of the underlying facts. Yet Plaintiffs refuse to consent to Defendants' use of the photographs in public filings. At a minimum, the Court should modify or clarify the Court's tentative Order (ECF No. 5) to confirm that it does not preclude the use of those photographs.

## CONCLUSION

The Court should grant this motion and order Plaintiffs to re-file their complaint in compliance with Rule 10(a) (without altering the briefing schedule on the pending motion to dismiss).

Dated: February 6, 2026

Respectfully submitted,

STANLEY E. WOODWARD, JR.
Associate Attorney General

MICHAEL WESIBUCH, Senior Counsel
ANNA EDWARDS, Counsel
Office of the Associate Attorney General

JEANINE FERRIS PIRRO
United States Attorney

By: *<u>/s/ Andrew J. Vaden</u>*

ANDREW J. VADEN
Assistant United States Attorney
DC Bar No. 1044860
601 D Street, NW
Washington, DC 20530
(202) 252-2437

*Attorneys for the United States of America*